# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    07 C 4333  (02 CR 818) |
| | ) | Judge Blanche M. Manning |
| | ) | |
| ANDRE WELCH, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Before the court is Andre Welch's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the reasons discussed below, the motion is denied.

## I.    Facts

In August 1997, there was a bank robbery at the Illiana Federal Credit Union in Calumet City, Illinois.  Welch's fingerprints were not identified at the crime scene; however, Welch matched the general description of the bank robber as provided by a bank teller and a bank customer.  In addition, "a search of Welch's house uncovered an air gun with a brown handle similar to the gun the teller saw, as well as a family photograph where Welch was wearing a baseball hat and sunglasses similar to those worn by the bank robber." *U.S. v. Welch*, 368 F.3d 970, 971-72 (7th Cir. 2004), vacated in light of *Booker*, *Welch v. U.S.*, 543 U.S. 1112 (2005).

Welch was indicted for the bank robbery in August 2002 and went to trial.  At trial, several individuals, including a former roommate, a former co-worker and Welch's ex-wife, identified Welch as the robber on the bank surveillance tape.  Welch was convicted.  This court sentenced him to 160 months' imprisonment, which was upheld after a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).  *See U.S. v. Welch*, 429 F.3d 702 (7th

Cir. 2005).

Welch initially filed a voluminous pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255, and the court set a briefing schedule on that motion. After reviewing the briefs filed by both Welch and the government, the court appointed counsel for Mr. Welch. *See* Order dated May 28, 2008, Dkt. #32-1. The court allowed counsel to file an amended § 2255 motion[1] and further directed the parties to submit position papers on whether an evidentiary hearing was necessary. The parties filed their position papers and the court agreed with Welch that an evidentiary hearing was necessary to address arguments made by Welch concerning communications which he had with his then defense counsel regarding an alleged four-year plea agreement. *See* Order dated October 20, 1998, Dkt. #56. The court set a hearing date of January 23, 2009, and directed that "the scope of the hearing shall include inquiry into not only the purported four-year plea offer by the government but also generally into defense counsel's conversations with Mr. Welch regarding his options of pleading guilty versus going to trial and the possible consequences of each." *See* Order dated January 13, 2009, Dkt. #64.

The evidentiary hearing was held as scheduled and the court directed the parties to brief the issues addressed during the hearing, *i.e.*, trial counsel's efforts at pursuing a plea agreement and his communications with Welch regarding pleading guilty. The court's discussion of the issues associated with Welch's contention that counsel provided ineffective assistance of counsel due to his purported failure to pursue plea negotiations occurs at Section II.A.1.b. of this memorandum order and opinion. The remaining sections of this memorandum order and

---

[1]The court has addressed only those issues raised in the amended § 2255 motion [51-1] unless otherwise indicated herein.

opinion address arguments made by Welch's appointed counsel in the amended § 2255 motion and reply in support, *see* Dkt. ## 51 and 57, unless otherwise indicated.

## II.    Analysis

A.    *Ineffective Assistance of Counsel*

A petitioner bears a "heavy burden in proving that [his] attorney rendered ineffective assistance of counsel." *U.S. v. Holland*, 992 F.2d 687, 691 (7th Cir. 1993). To prevail, the petitioner must establish that: (1) his attorney's representation "fell below an objective standard of reasonableness"; and (2) his defense was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner bears the burden of both proof and persuasion that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment ... [and] that the deficient performance prejudiced the defense." *U.S. v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993), *quoting Strickland*, 466 U.S. at 687. The *Strickland* test also applies to claims of ineffective assistance of appellate counsel. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000).

1.    Counsel's Purported Failure to Communicate and Pursue Plea Offer

a.    *Alleged four-year plea offer*[2]

Welch first argues in his pro se motion that his attorney failed to inform him of a plea bargain offered by the government. According to Welch, his attorney told Welch's wife about

---

[2]As noted above, Welch initially filed a voluminous pro se motion and reply in support of his § 2255 motion, which included the assertion that his lawyer failed to communicate an alleged four-year plea deal by the government. This assertion was also made by Welch's appointed counsel in the position paper filed on Welch's behalf regarding whether the court should conduct an evidentiary hearing. *See* Dkt. #50. However, Welch's post-hearing brief completely abandons this ground for relief. Nevertheless, in the interests of completeness, the court will address this issue as initially briefed by Welch, acting pro se, and the government.

the plea bargain but purportedly told her it "was not much of an offer" because the government was offering four years while the most Welch could be sentenced to was five years.

Welch's counsel filed an affidavit with the court responding to Welch's assertions.[3] Chiphe Affidavit, Dkt. #23, December 7, 2007. In that affidavit, defense counsel attests that he did not recall ever having any discussion with the government about a plea deal or receiving any written draft or proposed plea agreement from the government. *Id*. at ¶ 4.

Counsel's assertion is corroborated by an affidavit from the Assistant United States Attorney who was the lead prosecutor in the case against Welch, Charles Ex. In his affidavit, attached as a response to the § 2255 motion, AUSA Ex attests that he and counsel for Welch "never commenced the negotiation of or discussed the topic of a guilty plea either prior to the trial of this case, or after the conviction." Ex Affidavit, Dkt. #26-2, at ¶ 4. He further states that "[t]he government never tendered any guilty plea proposal to Mr. Chiphe. Any tender of such an offer would have only been in writing, after a request from defense counsel, and after preliminary review by a supervisor of the United States Attorney's Office. That never happened in this case." *Id*. at ¶ 5.[4] AUSA Ex further attests that "defendant's claim that the government offered him a 48 month plea deal prior to trial is a complete fabrication" because "any proposed agreement from the government would certainly have been based on a sentence far in excess of 48 months." *Id.*

---

[3]This affidavit was submitted pursuant to this court's order dated November 21, 2007. Counsel for Welch had initially declined to submit an affidavit as requested by the government due to concerns about the attorney-client privilege. This court's order of November 21, 2007, concluded that Welch had impliedly waived his attorney-client privilege by making certain communications with counsel the basis for his § 2255 motion. The order directed Welch's counsel to comply with the government's request for an affidavit and counsel so complied on December 7, 2007.

[4]AUSA Ex reiterated this testimony at the evidentiary hearing. *See* Tr. 29-33.

Based on these affidavits, the court concludes that no plea deal was ever discussed between the government and Welch's counsel. Welch's self-serving statements and his wife's affidavit do not persuade the court otherwise in the absence of any evidence that a four-year plea deal was offered by the government. *Gallo-Vasquez v. U.S.*, 402 F.3d 793 (7th Cir. 2005) (rejecting ineffective assistance of counsel claim in § 2255 motion where "aside from the allegation contained in Gallo-Vasquez's motion, there is no evidence that the government offered petitioner a deal. The motion does not attach a copy of the proposed agreement, state when or by whom the offer was made, or give any details other than to assert that it contemplated a 48-month sentence.").

Moreover, even assuming that there was a plea deal, Welch contradicts his own assertion that he was unaware of the plea deal when he states that on one occasion, his attorney asked Welch if his wife had mentioned the plea bargain to Welch. Indeed, Welch attaches an affidavit from his wife which states that "I did inform Welch of Mr. Chiphe's statement of the maximum sentence and the plea offer and based on confidence in Mr. Chiphe [sic] advice, Welch went to trial." Affidavit of Events, attached to Supplement to Amend 28 U.S.C. § 2255 Motion to Vacate Set Aside or Correct Sentence, Dkt. # 10-1.

Further, while Welch asserts that his attorney never "discuss[ed]" the plea offer, Welch at the same time claims that he did not inquire about a plea deal because his attorney had assured him that he could receive only 60-72 months imprisonment while the plea deal was only for four years and thus "was not worth taking." Accordingly, Welch's assertion that his counsel failed to communicate a plea offer is unsupported and indeed, even contradicted by the facts as set forth by Welch. *Hughes v. U.S.*, No. 1:02CR45-8, 2007 WL 841940, at **4-5 (March 19, 2007

W.D.N.C.)(concluding that no evidentiary hearing was necessary on § 2255 ineffective assistance of counsel claim where petitioner alleged that trial counsel should have instructed the petitioner to accept a seven-year plea deal where trial counsel submitted affidavit that the plea offer did not include a seven-year term, the affidavits submitted by petitioner and his wife were contradictory, and petitioner did not include copy of alleged seven-year plea offer).[5]

For these reasons, to the extent that Welch seeks relief under § 2255 based on counsel's alleged ineffective assistance for failing to tell him of a purported four-year plea offer, that request is denied.

    b.    *Discussions between counsel and Welch regarding pleading guilty*

Welch also asserts in the post-hearing briefs, which were submitted by counsel on Welch's behalf, that Welch's trial counsel's failure to pursue plea negotiations in this matter constituted ineffective assistance of counsel. Welch appears to make several arguments on this front that are interrelated and the court has distilled the arguments down to the following position: Welch's counsel's failure to pursue plea negotiations, particularly in light of the government's purported amenability to a plea as demonstrated by the Rule 16.1 letters (described below), was unreasonable and led Welch to not be fully informed of his options before going to trial.[6]

_____

[5]The court notes that although Yvonne Welch was present at the evidentiary hearing and Welch had previously indicated to the court that she would be called to testify as a witness at the evidentiary hearing, Welch did not call her to testify.

[6] Specifically, Welch asserts that counsel's "failure to contact the prosecution regarding the possible terms of a plea rendered [counsel] unable to properly advise Welch as to the costs and benefits of entering into plea negotiations, in violation of the [relevant] ethical standards . . . ." Welch's Brief at 9, Dkt. #68. According to Welch, "[i]f the government seemed willing to make substantial sentencing concessions, for example, this fact may have influenced Welch to aggressively pursue plea negotiations." *Id*. Welch asserts that counsel's failure to contact the government about a possible plea deprived Welch of the ability to make a fully informed

The Seventh Circuit reviews ineffective assistance of counsel claims as follows:

> Our examination of an ineffectiveness of counsel claim is highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices. In order to determine whether the defendant has met the performance prong, we consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies. With respect to the prejudice prong, the defendant must be able to demonstrate that the complained of deficiency resulted in a reasonable probability that in the absence of error the result of the proceedings would have been different and that the proceeding was fundamentally unfair or unreliable.

*Valenzuela v. U.S.*, 261 F.3d 694, 698-99 (7th Cir. 2001)(internal citations, quotations and modifications omitted).

As background, the court notes that the government is required to turn over discovery to the defendant under Fed. R. Crim. P. 16.1. Tr. 15. As AUSA Ex testified at the hearing, "[w]e always did that with a cover letter pursuant to Federal Rule of Criminal Procedure 16.1." *Id*. In this case, the government sent to Welch two Rule 16.1 letters. The government sent the first Rule 16.1 letter to defense counsel on September 5, 2002, notifying him of the government's general practice that it does not favor negotiating plea agreements after trial preparation has begun. *See* hearing exhibit Welch 1; Tr. 14-15. The letter also indicated that if the defendant waited until trial preparation had begun to discuss pleading guilty, the defendant would be ineligible for the reduction pursuant to the third point under the acceptance of responsibility guidelines provision. *Id*. AUSA Ex did not recall whether he had received a response to this letter. Tr. 16-17.

---

decision. Welch asserts that "[b]y failing to make *any* effort to pursue plea negotiations on Welch's behalf or even discuss with Welch the prosecution's possible amenability to a plea, [defense counsel] failed to act in the objectively reasonable manner required under the first prong of *Strickland* analysis." Andre Welch's Brief in Support of Relief Under § 2255 at 8, Dkt. #68.

The government sent the second Rule 16.1 letter to defense counsel on January 14, 2003, telling Welch that the government was beginning trial preparation on January 27, 2003, and that the defendant could face the possibility of losing the third acceptance of responsibility point if he did not commence plea negotiations before that date. *See* Hearing Exhibit Welch 3; Tr. 20-21. Again, AUSA Ex testified at the hearing that he did not recall whether he ever received a written acknowledgment of receipt of the second letter, Tr. 22, but attested in an earlier affidavit that "I never heard anything from Mr. Chiphe evincing any . . . desire by Welch to plead guilty." Affidavit of Charles Ex, attached as an exhibit to Government's Response to Defendant's § 2255 Motion, Dkt. #26-2, at ¶ 4. Welch testified at the hearing that his counsel never told him about the two Rule 16.1 letters.[7]

As an initial matter, the court notes that the evidence does not support Welch's position that the Rule 16.1 letters somehow demonstrated that the government was open to or amenable to a plea. AUSA Ex testified that he never asks a defendant for a plea and that "[i]f a defendant wishes to plea [sic], then they will communicate that with me." Tr. 31. He also testified that the reference to § 3E1.1 regarding the third point for acceptance of responsibility is a "standard part" of a Rule 16.1 letter. Tr. 16. As noted by the government, the letter "does not say that the government will enter into a plea agreement or is amenable to any particular concessions, including that the government will in fact agree to a reduction under § 3E1.1." Government's

---

[7]Welch also testified that his counsel failed to inform him that he might not be eligible for the third point for acceptance of responsibility under U.S.S.G. § 3E1.1 if he decided to go to trial. Tr. 70-73. Welch's counsel, while not specifically recalling whether he actually showed Welch the two letters, testified that he discussed with Welch the possibility that if he decided to go to trial, he might not be eligible to receive the third point reduction for acceptance of responsibility under § 3E1.1. Tr. 47.

Response at 16, Dkt. #74. Thus, to the extent that Welch's argument begins from the premise that the Rule 16.1 letters demonstrated an amenability to enter into a plea favorable to him, the court rejects this premise.

That being said, Welch argues that counsel acted unreasonably in failing to discuss a plea with Welch unless counsel had a sound reason for not doing so, and, Welch continues, neither of counsel's proffered explanations–the government's weak case and the defendant's assertions of innocence–is sound.[8]

The court does not find trial counsel's failure to pursue plea negotiations on Welch's behalf to constitute deficient performance. Welch himself repeatedly stated that the evidence against him was weak. *See* Government's Response at 17 n.12, Dkt. #74 (setting forth instances where Welch asserted that there was a "lack of evidence in the case" including "no fingerprints or any other physical evidence," and "no eyewitness identifications at the lineups"); *see also* Welch's original pro se Motion to Vacate, Dkt. #1, at 24 ("Due to the lack of evidence . . . ."). In light of this position, it was not unreasonable for counsel not to have pursued plea negotiations. *U.S. v. Thornton*, No. 08 C 3758, 2008 WL 5050083, at *1 (N.D. Ill. Nov. 18, 2008)(concluding that counsel's statement to defendant, who ultimately was convicted at trial, that he had a good chance of being acquitted did not constitute ineffective assistance where "there were not fingerprints on

---

[8]Specifically, Welch points to the commentary to the American Bar Association Standards for Criminal Justice, The Defense Function, which states that "[s]ince disposition by plea is mutually advantageous in many circumstances, involvement in plea discussions is a significant part of the duty of defense counsel . . . . Plea discussions should be considered the norm and failure to seek such discussion an exception unless defense counsel concludes that sound reasons exist for not doing so." *People v. Brown*, 223 Cal. Rptr. 66, 73-74 (Cal. Ct. App. 1986)(*quoting* Commentary to the American Bar Association Standards for Criminal Justice, The Defense Function, std. 4-6.1).

the firearm or testimony that someone saw him with the weapon or gunshot residue", and "there [wa]s nothing to back up Petitioner's assertion that he would have gotten a plea agreement"); *see also Almonacid v. U.S.*, 476 F.3d 518, 521 (7th Cir. 2007)("When counsel advises the defendant to reject a plea offer, his performance is not objectively unreasonable unless such advice is made 'in the face of overwhelming evidence of guilt and an absence of viable defenses.'")(citation omitted).

In addition, the court notes that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Here, Welch's counsel testified at the hearing that Welch consistently asserted his innocence. Tr. 55 ("Mr. Welch always, from when I met him in August, maintained that he was innocent . . . . [i]t was always my opinion that . . . there was a tryable case here, and I had a client who at all times maintained his innocence."); Tr. 58 ("Then combining that with a client who was . . . vehemently telling me he was innocent . . . . he said he was innocent, and he said he wanted to go to trial . . . ."). *See also* Chiphe Affidavit, Dkt. #23 at ¶ 4 ("Mr. Welch clearly communicated to me from the beginning of the case and throughout that he wanted to go to trial.").

Even when Welch stated that he would have pled guilty, he still maintained his innocence. *See* Welch's original pro se Motion to Vacate, Dkt. #1 at 5 ("I would have accepted a plea offer in spite of the lack of evidence in the case and protestation of innocence."). While the court agrees with Welch that protestations of innocence do not, per se, negate an ineffective assistance of counsel claim, they are relevant to the court's consideration of whether counsel's performance

was deficient under all of the circumstances.[9]

Moreover, Welch testified at the hearing that he neither asked his counsel to pursue a plea deal nor told his counsel that he wanted to plead guilty. Tr. 97. This failure is particularly telling in this case given that, at the hearing, Welch admitted that he had previously pled guilty to armed robbery in 1986, theft in 1986, and possession of marijuana in 2001. Tr. 79-82. In each of these cases, Welch stated that he had been represented by counsel. Tr. 82. While Welch testified at the hearing that he would have considered pleading guilty in this case, Tr. 77, this testimony is belied by Welch's concession that he never told his counsel that he wanted to do so despite his extensive experience with the criminal justice system.

The court agrees with Welch's statement that a "defendant has the right to make a 'reasonably informed decision' when deciding whether to accept a plea offer . . . ." Welch's Brief in Support at 9 (citation omitted). However, there was no plea offer from the government in this case. Significantly, Welch fails to point to any authority which states that defense counsel must, as a matter of law, discuss a possible plea deal with the government in order to render constitutionally effective assistance of counsel to a defendant. *Londono-Tabarez v. U.S.*, No. 07 Civ. 3572(DAB), 2008 WL 80729, at *5 (S.D.N.Y. Jan. 2, 2008)("Objectively adequate performance of counsel in the plea bargaining context does not necessarily require 'that the

---

[9]Welch relies heavily on *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003); however, this court finds the case distinguishable. In *Griffin*, the government affirmatively contacted defense counsel and communicated to him that he thought a five-year plea deal might be possible. Defense counsel told the government at that time that his client was innocent and would go to trial. Griffin asserted in his § 2255 motion that counsel never told him about the government's plea offer. The Sixth Circuit reversed the trial court's denial of § 2255 relief and remanded for an evidentiary hearing as to whether the defendant would have accepted the offer had he known about it. *Id.* at 735. In this case, however, no plea offer existed to be communicated to Welch.

defendant have counsel who recommends that a plea bargain be pursued'" and a "'wide range of reasonable professional' conduct is deemed to be sufficient in this context.")(citations omitted).

In sum, given Welch's assertions that he was innocent, the fact that he never told his counsel that he wanted to plead guilty, and his belief that the evidence against him was weak, the court concludes that counsel's failure to pursue plea negotiations on Welch's behalf was not unreasonable. Because the court concludes that counsel's performance regarding plea negotiations on Welch's behalf was not deficient, the court need not discuss the prejudice prong of the *Strickland* analysis.

    2.    <u>Counsel Allegedly Miscalculated the Sentencing Guideline and Misrepresented to the Defendant the Maximum Time to be Served.</u>[10]

As noted above, Welch argues that his trial counsel incorrectly informed him that his maximum sentence would be 60-72 months but he received a sentence of 160 months, 100 months more than what counsel told him he could receive. In his amended § 2255 motion, Welch contends that counsel's performance was deficient because he did not conduct an adequate investigation and thus was unaware of alleged prior misconduct by Welch (i.e., a number of prior bank robberies for which the government previously sought to bring charges but as to which

---

[10]In his reply in support of his amended § 2255 motion, Welch asserts that "trial counsel failed to conduct a reasonable investigation or failed to possess sufficient working knowledge of the United States Sentencing Guidelines, and, as a result, provided advice to Mr. Welch that fell below acceptable professional standards." Dkt. #57 at 2. Welch goes on to state that "Mr. Welch will seek to establish [at the evidentiary hearing] that counsel did an insufficient investigation to meaningfully weigh the merits of the [four-year] plea offer that he communicated that he had received from the Government." As noted earlier, Welch appears to have abandoned his assertion that the government made an offer to defense counsel for a four-year plea deal. Thus, it is not clear to the court whether Welch still intends to challenge counsel's advice regarding application of the Sentencing Guidelines. In the interest of completeness, the court will nevertheless address the issue as raised in Welch's pro se § 2255 filings and the brief discussion in his amended § 2255 motion [#51-1].

Welch was not convicted or brought to trial) that led to a sentence enhancement for him. Welch asserts that had counsel been aware of the prior misconduct, he would have known that Welch would have been subject to the sentence enhancement. Welch then argues that had counsel advised him that he could receive up to 160 months, he "may have questioned counsel about the possible benefits of approaching the government with an offer to plead guilty, in the hopes of receiving a favorable sentencing recommendation from the prosecution." Amended Motion to Vacate at A-3, Dkt. # 51-2. Finally, Welch notes that by not pleading guilty, he did not receive the third reduction point under § 3E1.1 for acceptance of responsibility.

Welch's trial counsel states in his affidavit that prior to trial, he discussed Welch's possible Guidelines range with him and that he never promised or represented to Welch that his sentence would be capped at the 60 to 72-month range. Chiphe Affidavit, Dkt. 23, at ¶ 5. Counsel further attests that he explained to Welch that any Guidelines projections were estimates based on his professional judgment, that the government would have input as to what the range should be, and that the final sentencing decision was up to the court. Finally, counsel states that he reiterated to Welch before trial that the maximum penalty he faced for the charged bank robbery was 20 years imprisonment.[11] The government also notes that during the hearing on the defendant's motion for reconsideration regarding detention, AUSA Ex noted the penalties that the defendant faced, stating that "our estimates of the guideline calculations put him at a level of what could go well over ten years in prison. . . ." Government's Response to Welch's Pro Se Motion to Vacate, Dkt. #26, at

---

[11]Additionally, Welch's original sentence, prior to an upward departure based on the inadequacy of the criminal history category under U.S.S.G. § 4A1.3 and an enhancement for obstruction of justice, was 84 to 105 months. *See United States v. Welch*, 429 F.3d 702, 703 (7th Cir. 2005). Thus, the top end of defense counsel's estimate of 60 to 72 months was only 12 months less than the low end of Welch's original range.

20.

The court need not reach the alleged deficient performance issue as Welch has not demonstrated that any failure on his counsel's part to inform him of the proper sentencing range is prejudicial under the second prong of *Strickland*. In this context, demonstrating prejudice would require Welch to show that, despite counsel's errors, he would have pled guilty and not gone to trial. *United States v. Neely*, No. 00 C 6119, at *7 (N.D. Ill May 14, 2001). In order to establish prejudice, Welch cannot simply assert that he would have pled guilty instead of having gone to trial. *Cf. Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003)("[A] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.")(citation and internal quotation marks omitted). "The defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Cieslowski*, 410 F.3d at 359 (citation omitted).

In an attempt to satisfy this standard, Welch contends that counsel's misrepresentation of the Guidelines range "resulted in prejudice by the missed opportunity to accept a plea offer which would have produced a shorter or more reliable result." Motion at 8. In light of this court's finding, however, that no four-year plea deal existed, Welch's assertion that he would have received a shorter sentence had he accepted a non-existent four-year plea deal rings hollow. Moreover, even assuming that he had not gone to trial and had pled guilty pursuant to a blind plea, Welch submits no evidence demonstrating that he would have received a lower sentence by pleading guilty because no evidence shows that the government would not have sought the same obstruction of justice enhancement or made the same request for an upward departure based on the inadequacy of Welch's criminal history category.

As to any decrease in his offense level he may have received for acceptance of responsibility for pleading guilty, a timely plea of guilty by itself does not entitle a defendant to a reduction in his offense level for acceptance of responsibility. *United States v. Travis*, 294 F.3d 837, 840 (7th Cir. 2002). Moreover, a "defendant whose sentence was properly enhanced for obstruction of justice is presumed not to have accepted responsibility." *U.S. v. Davis*, 442 F.3d 1003, 1009 (7th Cir. 2006). Indeed, "[i]t is only under exceptional circumstances that a defendant who has received a sentence enhancement for obstruction of justice will be given a downward adjustment for acceptance responsibility." *Id.* at 1009-10 (citation omitted). Welch has provided no objective evidence that his case is an exceptional one such that he would have received the acceptance of responsibility reduction despite having received the enhancement for obstruction of justice.

In addition, Welch's assertion that he would have pled guilty instead of opting to go to trial is belied by the fact that Welch still maintains his innocence. *See* Motion to Vacate, Dkt. #1, at 5 ("Had counsel competently advised me on the plea offer, . . . , I would have accepted a plea offer in spite of the lack of evidence in the case and protestation of innocence."). Indeed, as noted above, defense counsel attests that Welch insisted that he wanted to go to trial from the beginning of the case.

Because Welch must show actual prejudice instead of the mere possibility of prejudice, *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996), Welch has failed to meet his burden such that the court could conclude that any deficient performance was prejudicial. Accordingly, because Welch is unable to demonstrate prejudice from counsel's alleged deficient performance, the court denies his claim of ineffective assistance of counsel based on counsel's purported failure to advise

Welch of the proper Guidelines range.

      3.      <u>Counsel's Purported Failure to Raise Insufficiency of the Evidence on Direct Appeal</u>[12] _____

Welch next argues that defense counsel was ineffective for having failed to raise the insufficiency of the evidence on direct appeal.[13]  According to the Seventh Circuit, the analysis for ineffective assistance of appellate counsel is as follows:

> We deem performance insufficient when counsel omits a significant and obvious issue without a legitimate strategic reason for doing so. We find prejudice when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial.

*Howard,* 225 F.3d at 790 (internal citations and quotation marks omitted).

After trial, defense counsel made a motion for acquittal regarding the sufficiency of the evidence and a motion for a new trial challenging the exclusion of the defendant's expert witness on eyewitness identifications.  Both of these motions were denied.  On direct appeal, defense counsel challenged only the district court's exclusion of the expert witness offered by the defendant.

Challenges to the sufficiency of the evidence pose an exceedingly high hurdle and as a

---

[12]The court disagrees with the government's assertion, *see* Dkt. #14 at n.6, that Welch's ineffective assistance of counsel argument regarding "his lost opportunity to plead guilty" somehow precludes him from raising stand-alone challenges to his conviction.  The court will address Welch's arguments related to his conviction herein.

[13]In Welch's amended motion to vacate, he states that he instructed counsel to raise several issues on appeal, including: "unreasonable length of sentence; insufficiency of the evidence; unconstitutional sentence enhancements based on unproven conduct; and insufficient factual basis for sentence enhancements."  The amended § 2255 motion contains no substantive discussion of these issues.  In his reply in support of his amended § 2255 motion, Welch asserts only that counsel was ineffective for failing to have raised the insufficiency of the evidence on appeal.  Because the insufficiency of the evidence issue is the only one substantively addressed by Welch, this is the only issue that the court will consider.

result, a low success rate. *United States v. Sebolt*, 460 F.3d 910, 915 (7th Cir. 2006)(noting that "[i]n challenging the sufficiency of the evidence, [a defendant] bears a heavy burden and faces a nearly insurmountable hurdle" and "[t]he jury verdict is entitled to great deference, and we will uphold it if, viewing all facts and making all inferences in the prosecution's favor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")(internal citations and quotation marks omitted).

Welch asserts that counsel should have raised insufficiency of the evidence on appeal because the evidence against him was so weak. Specifically, Welch asserts that there was no physical evidence linking Welch to the crime, no eyewitness identifications at line-ups and the two witnesses who were present at the robbery did not identify Welch as the perpetrator. Welch goes on to discuss alleged weaknesses in the testimony of four other witnesses, acquaintances of Welch, who were called to identify Welch based on bank surveillance photographs. For example, Welch notes that William Wright, a former roommate of Welch, "did not know" if the man in the photographs was Welch. In addition, a former co-worker, Lorraine Cook, claimed that she recognized Welch in the photograph but admitted that when she was asked the same question five years earlier by the FBI, she had not positively identified Welch. Further, Welch states that another witness, Steve Austin, admitted to receiving immunity in the case and that he also lied three times, once on the stand and twice to FBI agents investigating the robbery before trial. Finally, Welch takes issue with evidence introduced by the government, including a pellet gun and ammunition, which had been found in Welch's possession. According to Welch, the pellet gun was not shown to be the weapon brandished by the robber and the ammunition introduced by the government was not capable of being used with the pellet gun. Welch concludes that the evidence was not

sufficient to convict him beyond a reasonable doubt and counsel should have raised this issue on direct appeal.

In a June 10, 2003, order, this court denied Welch's post-trial motion for acquittal, rejecting the exact arguments discussed above and concluding that there was sufficient evidence to support a guilty verdict. Given the "nearly insurmountable hurdle" a defendant faces in raising a challenge to the sufficiency of the evidence, and this court's rejection of the argument in Welch's Rule 29 motion, the court finds no basis on which to conclude that there is a reasonable probability that raising the issue would have made a difference in the outcome of the appeal. *Howard*, 225 F.3d at 791 (prejudice inquiry in challenge to effective assistance of counsel on appeal requires the court to determine whether "there is a reasonable probability that raising the issue would have made a difference in the outcome of the appeal"). Thus, because the court concludes that Welch suffered no prejudice, the court rejects his claim that counsel rendered ineffective assistance by failing to raise the insufficiency of the evidence on appeal.

### 4. Counsel's Failure to Object to Evidence

Welch also asserts that defense counsel failed to object to the admission of evidence, specifically, the pellet gun that was found in Welch's house and which a bank teller identified as being used by the bank robber in the course of the robbery. The pellet gun, some bullets and a magazine clip were exhibited at trial. In his pro se filing, Welch claims that because "there was no evidence linking the pellet gun introduced at trial to the commission of the crime," it had no probative value and counsel should have objected to its admission (as well as the admission of the semi-automatic handgun ammunition found in Welch's house). In the amended § 2255 motion filed by counsel, Welch asserts that counsel was ineffective because he "failed to object to the

introduction of the pellet gun despite the fact that a prosecution witness testified that the robber utilized an automatic handgun, not a pellet gun, during his commission of the robbery." *See* Welch's Motion to Vacate, Dkt. #51-2, at A-4. The court construes that as objection based on relevance and/or that the prejudicial nature of the evidence substantially outweighs its probative value under Fed. R. Evid. 403.

As noted by the government, the evidence was clearly relevant given the bank teller's testimony that the pellet gun resembled the gun that the bank robber possessed. Moreover, the bank teller also testified that the gun she saw was an automatic weapon, thus making the bullets and the magazine clip relevant "to show that defendant was regularly in close proximity to semi-automatic ammunition." Government's Response to Welch's Motion to Vacate, Dkt. #26, at 33. The court thus rejects Welch's position that counsel's performance was deficient for failing to object to its relevance.

To the extent that Welch seeks to argue that counsel's performance was deficient for failing to challenge the admissibility of the evidence under Fed. R. Evid. 403, the court also is not persuaded. Under Rule 403, "'[r]elevant evidence is not inadmissible ... unless its probative value is *substantially* outweighed by the danger of *unfair* prejudice. The fact that evidence is prejudicial or damaging to the defendant does not of itself classify the evidence as inadmissible.'" *United States v. Montoya*, 891 F.2d 1273, 1285 (7th Cir. 1989)(*quoting United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985) (emphasis in original); *see* Fed. R. Evid. 403. In fact, "relevant evidence is inherently prejudicial." *Montoya*, 891 F.2d at 1285 (citation omitted); *see also United States v. Neeley*, 189 F.3d 670, 682 (7th Cir. 1999) ("our decisions have emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial

to be excluded").

Here, Welch does not identify how admission of the pellet gun and ammunition were unfairly prejudicial such that they should have been excluded. Moreover, defense counsel did not leave the evidence unanswered. Rather than challenge the admissibility of the items, counsel arguably made a strategic decision to rebut the evidence by putting Welch's wife on the stand to testify that the bullets and magazine belonged to her ex-husband who kept the items at her house and that the pellet gun belonged to her teenage son.

Nor is there any indication that, in light of the testimony by the witnesses, the introduction of the pellet gun and the ammunition affected the outcome of the trial. As such, this basis for Welch's motion to vacate is denied.

5.      Counsel's Failure to Object to Prosecutorial Misconduct[14]

Welch next argues that trial counsel's performance was deficient because he failed to object to several arguments made by the government, which Welch contends constituted prosecutorial misconduct.

As recently stated by the Seventh Circuit:

>   In reviewing a claim of prosecutorial misconduct, we consider first whether the challenged remark by the prosecutor was improper, and second, whether it prejudiced the defendant. *United States v. Serfling*, 504 F.3d 672, 677 (7th Cir. 2007). In determining prejudice, we examine a number of factors, including: (1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the response; (4) the efficacy of curative instructions; (5) the defendant's opportunity to rebut; and (6) the weight of the evidence. *Id.* "Ultimately, the inquiry turns on whether the improper statement 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id., quoting Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct.

_____

[14]The court has primarily addressed this argument as framed in Welch's pro se § 2255 motion to vacate.

2464, 91 L.Ed.2d 144 (1986) (quotation marks and citation omitted).

*U.S. v. Corley*, 519 F.3d 716, 727 (7th Cir. 2008).

Welch's objections to certain of the prosecutor's statements fall into two general categories: (a) that the prosecution made improper remarks regarding the credibility of witnesses and (b) that the prosecution improperly injected their personal beliefs into the closing argument.

(a) Credibility of Witnesses

"Comments on the credibility of witnesses are permissible so long as the comments are based on proper inferences gleaned from the evidence at trial." *U.S. v. Catalfo*, 64 F.3d 1070 (7th Cir. 1995)(citations omitted). Welch argues that several statements made by the prosecutor regarding the testimony of certain witnesses were improper. However, the prosecutor's comments were based on inferences taken from the evidence presented at trial.

For example, Welch objects to the government's statement that Wright "told you the man in the video and in these photographs was Andre Welch" and "you heard from William Wright and from Steve Austin. Both of them identified Andre Welch as the man in this photograph and this video who robbed the Illiana Federal Credit Union." Specifically, with respect to Wright, the prosecutor said that:

> You also heard from two of the defendant's roommates and co-workers . . . William Wright and . . . Steve Austin. Both of them lived with the defendant . . . prior to this bank robbery. Both of them worked with Andre Welch prior to this bank robbery. Both of them identified Andre Welch as the man in this photo and in this [bank] video who robbed the . . . credit union. . . . William Wright identified him. . . . He did it begrudgingly, ladies and gentlemen, but he told you the man in the [bank] video and in these photographs was Andre Welch.

Welch asserts that Wright testified on cross-examination that at no point did he say he was certain that the person in the surveillance video was Welch. While Welch argues that Wright

stated that he was not certain it was Welch, he testified that he was 80 to 90% sure it was Welch. Thus, the court does not find that the prosecutor's statement that Wright identified Welch as the bank robber to be improper.

Second, Welch challenges the government's assertion that the reference by Steve Austin, Welch's former housemate and co-worker, that "banks" meant that Welch was "robbing banks" is unsupported and that the prosecutor improperly vouched for Austin by arguing that "do you know how else you know [Austin's] telling you the truth when he said that, because Lorraine Cook, as I pointed out, told you this man is constantly telling her at work. . . ." The challenged statements by the prosecutor with respect to Austin took place in the following context:

> Mr. Austin is clearly a man who made a mistake. He got on that witness stand and he admitted his mistake. He lied to the FBI, and not once but twice when he was approached and interviewed. He told you why he lied, because he was scared. He was scared on Andre Welch. Austin went on to ask the defendant, after defendant said he had a way to make some extra money, 'Sure, how?' at which point defendant said 'I'll have to kill you if I tell you.' . . . When Austin asked him a little later, 'Well, what's the way to make extra money?', Welch replied, 'Banks.' What, ladies and gentlemen, could that possibly mean other than robbing banks . . . . He is not J. Rockefeller. He doesn't own a string of banks. He doesn't work at banks. Do you know how else he's telling the truth when he [Austin] said that? Because Lorraine Cook, as I pointed out, told you this man is constantly telling her at work; I'm always broke. Now, you know, how does a guy who's broke come up with some extra money?. . . Lo and behold, they have this conversation in the beginning of that work week, . . . and by [the end of that week], this bank is robbed. Think about it. Coincidence. He's telling is coworkers: 'Hey I'm always broke. Hey, you want to get some extra money? Banks.'

Trial Tr. at 345-47. Taking into account the context in which the prosecutor made the comments about Austin, it is clear that he is not personally vouching for Austin, but argues how the evidence presented in the case supports the jury finding Austin to be a credible witness. The court does not find these statements by the prosecutor to have been improper.

Third, Welch takes exception to the purported improper vouching for the veracity of Judith Welch, Welch's ex-wife, when the prosecutor said "the fact is that she was right . . . and when she also says that those shoes were red, I submit you can take it to the bank that she knows the clothes that the husband owns and the type of shoes and that those were red shoes." As to Judith Welch, the prosecutor was merely recounting her testimony and reminding the jury that as Welch's former wife, she could identify his shoes and clothes. The court finds no prosecutorial misconduct with respect to this statement.

Finally, with respect to Lorraine Cook, Welch's former co-worker, Welch argues that the prosecutor improperly vouched for her when he argued that she "has no agenda to be here and to come in and lie." Welch contends that Cook had an employment application pending at that time with the police department, which he apparently believes could have created a motive to lie. The court is not persuaded by Welch's assertion that her purported pending application with the police department caused the prosecutor's statement that she had no "agenda" to be improper such that counsel should have objected. Welch fails to provide any basis for his assertion that Cook had a pending application with an unspecified police department. Indeed, even if she did, Welch does not state how the prosecutor's comment that she had "no agenda" was improper, particularly given that there is no evidence that the existence of the purported application was disclosed at trial.

Moreover, the court notes that the prosecution's comments were also made in response to defense counsel's closing argument in which he challenged the various witnesses' identifications of Welch as the bank robber. Trial Tr. at 332, 334 (challenging the credibility of ex-wife Judith Welch noting that "hell has no fury as a woman scorned"); Trial Tr. at 332 (accusing Austin of being an "admitted liar" and changing his testimony midstream); Trial Tr. at 331, 337 (questioning

Cook's memory after five years of not seeing Welch and stating that "if Ms. Cook's memory is that good, we should clone her, but I suspect that her testimony has more to do than with just her memory.").

The court concludes that the prosecutor's comments with respect to the various witnesses' credibility were not personal comments of the prosecutor's perception of the witnesses but were based on the evidence presented at trial and were therefore not improper.

(b) Personal Beliefs

Welch challenges the prosecutor's closing argument in which he argued to the jury that it should "come to the right decision" and that "that right decision is only one thing, to convict that man" and "you must find Andre Welch guilty of bank robbery as charged."[15]

Welch argues that these statements implied personal belief of guilt and were therefore improper. However, the prosecutor recounted the evidence presented at trial and argued that the

---

[15]These quotes were made by the prosecutor in the following context:

> "You can look at this evidence, this physical evidence [bank tapes and photographs] and you can determine along with all the other evidence that has been presented that without a question, without a doubt, the man who robbed the . . . Credit Union . . . was the defendant, Andre Welch. Based on that evidence, ladies and gentlemen, you must find Andre Welch guilty of bank robbery as charged." Tr. at 326.
> . . .
>
> Ladies and gentlemen, . . . Mr. Chiphe and I are doing the best we can. We're trying to present the evidence to you as we see it. Do you know what? It's not what I ultimately say, and its not what he ultimately says. You guys all heard the testimony and the evidence for yourselves, so ultimately, you decide . . . . I submit to you that you use your own collective memories, your own collective experiences, and come to the right decision. Ladies and gentlemen, that right decision is only one thing, to convict that man." Trial Tr. at 347.

only conclusion the jury could come to based on that evidence was that Welch was guilty. These comments were proper. *U.S. v. Auerbach*, 913 F.2d 407, 418 (7th Cir. 1990)("We decline to adopt the defendant's curious view that it is improper for the prosecutor to argue to the jury that a defendant is guilty."). Indeed, the Seventh Circuit stated in *Auerbach* that while the prosecutor is not permitted to express personal opinions, in that case, "[e]ach comment cited by the defendant was prefaced by a reference to the government's case; the prosecutor's statements were simply a permissible comment upon what the evidence showed and not a statement of his personal opinion regarding the defendant's guilt." *Id.* (citations omitted).

Even assuming that the comments were improper, Welch has not shown prejudice from the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." The prosecutor himself told the jury that it was up to them to determine Welch's guilt based on the evidence presented at trial. Trial Tr. at 347 ("It's not ultimately what I say and its not ultimately what [defense counsel] says. You guys all heard the testimony and the evidence for yourselves, so ultimately you decide. . . ."). Further, the court instructed the jury that "opening statements, closing arguments and other statements of counsel should be disregarded to the extent that they are not supported by the evidence." Trial Tr. 313. *U.S. v. Catalfo*, 64 F.3d 1070, 1081 (7th Cir. 1995)("Moreover, we ordinarily presume that the court corrected any error, of which there was none, by instructing the jury as it did that '[o]pening statements, closing arguments and other statements of counsel should be disregarded to the extent they are not supported by the evidence.'")(citation omitted). Finally, the jury was instructed to consider the immunized testimony of Steve Austin "with caution and great care." Trial Tr. at 316.

Accordingly, because the court finds that the prosecutor's statements were not improper,

and even if they were, that Welch has failed to demonstrated the requisite prejudice, the court denies this basis for Welch's claim of ineffective assistance of counsel.

**III.    Conclusion**

For the reasons stated herein, Welch's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1-1, 51-1] is denied.  To the extent that Welch objected in his post-hearing reply, Dkt. #76, to the government's characterization of alleged concessions and purported improper supplementation of the record, the court will not address these as they played no role in the court's consideration or resolution of Welch's motion.

The court thanks appointed counsel for their zealous and committed representation of Mr. Welch and appreciates the thorough briefing by both parties.

Date:  **June 2, 2009**                                                                     _Blanche M. Manning_

                                                                                    **Blanche M. Manning**
                                                                                    **United States District Judge**